[No. G036413. Fourth Dist., Div. Three. Jan. 22, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY LEE MORTON, Defendant and Appellant.

COUNSEL

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEDSWORTH, Acting P. J.**—Roy Lee Morton appealed from his conviction on charges of domestic battery with corporal injury (Pen. Code, § 273.5, subd. (a)), and misdemeanor assault (a lesser included offense of the aggravated assault charged pursuant to Pen. Code, § 245). Morton argued the court abused its discretion in allowing the jury to hear evidence he had engaged in a prior, uncharged incident of domestic violence, and erred by following our Supreme Court's precedent in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] in its application of California's determinate sentencing law.

We were unpersuaded of any error. There is no basis to conclude the court abused its discretion on the evidentiary issue. The prior incident of domestic violence bore significant similarities to this one, and the fact that it was unprovoked—rather than provoked as Morton contends this incident was—made it germane to Morton's claim of self-defense. The court's decision to admit testimony concerning the prior incident from the alleged victim's son was likewise reasonable. The son was a direct witness to the prior incident, and while he was of a tender age (nine years) at the time of the incident, he was 19 at the time of his testimony. The "emotional impact" of his testimony was doubtless blunted somewhat by that passage of time.

Nor did we find any error on the sentencing issue raised. We found two of the bases relied upon by the trial court were constitutionally permissible and the third was a point on which no reasonable juror could disagree with the court's conclusion. Our Supreme Court granted a hearing in the case on the sentencing issue, and has remanded it to us for reconsideration in light of its decisions in *People v. Black* (2007) 41 Cal.4th 799 [62 Cal.Rptr.3d 569, 161 P.3d 1130] and *People v. Sandoval* (2007) 41 Cal.4th 825 [62 Cal.Rptr.3d

588, 161 P.3d 1146]. But we find nothing in either of those cases inconsistent with our original opinion on this issue. Indeed, they clarify the propriety of the court's sentence. We therefore reaffirm the judgment.

## FACTS

The events giving rise to the crimes charged against Morton occurred on November 7, 2004. At that time, Morton resided with his girlfriend and alleged victim, Theresa W. According to the prosecution's evidence, Morton was sitting in the living room watching television, while Theresa W. was cooking in the kitchen, topless. Morton made an unflattering comment about Theresa W.'s appearance as compared to that of a stripper in the movie he was watching. Theresa W. took umbrage, told Morton she was going to move out, and noted that he also fared poorly in comparison to the "good looking and big" man in the movie.

Not to be outdone in the umbrage department, Morton picked up the chair he had been sitting in, and tried to throw it through the window near Theresa W. He then grabbed a wooden table and threw that at Theresa W. Neither connected.

Theresa W. went into the hallway, picked up the phone and attempted to call 911. Morton grabbed the phone from her, and they both went into the bedroom. Morton hit Theresa W. several times in the jaw with a closed fist, and "head-butt[ed]" her. When Theresa W. began screaming, he grabbed her by the throat from behind, and a neighbor heard her shout "you're going to choke me to death." According to the neighbor, Morton responded something to the effect of "I don't give a damn, you bitch."

Morton and Theresa W. ended up on the floor, and Morton again choked her until Theresa W. thought she would actually pass out. Although Theresa W. was able to get Morton's hands off her throat, he remained on top of her. He squatted over her face, then pulled down his pants and told Theresa W. "I'm going to shit on you."

Theresa W. managed to escape this Felliniesque nightmare, and fled the apartment, still topless. Morton followed her, but according to Theresa W., his mood had changed. He told Theresa W. he loved her and wanted to go to his sister's house. A neighbor overheard him say to Theresa W.: "be quiet, because if the cops come, I'm going to be gone. Is that what you want?"

The police did come, and Theresa W. was observed to be shaking and crying. She also had a cut on her right eye, injuries on her face, discoloration on her chest, and redness and bruising on her neck. The police observed no injuries on Morton. Theresa W.'s injuries were documented in photographs, which were introduced into evidence at trial.

In addition to evidence concerning the events of November 7, 2004, the prosecution also introduced evidence, over Morton's objection, concerning an uncharged incident of domestic violence committed by Morton in 1995. The alleged victim in that incident, Tina C., had been Morton's girlfriend. She testified she and Morton lived together on and off for several years. At the time of the incident, in September of 1995, they were living together with her nine-year-old son. Tina C. testified that Morton pushed her into the bedroom, hit her three or four times on her upper body with a closed fist, and slapped her multiple times with an open hand. Morton then choked her. Tina C.'s son, who had been in the bedroom at the time of the altercation, also testified. He stated he saw Morton push his mother into the bedroom, hit her in the face with a closed fist, and then choke her. He later saw "redness or hand prints" on her neck that had been caused by the choking.[1] Although Tina C.'s son was only nine at the time of the events recounted in his testimony, he was 19 at the time he gave that testimony.

Morton offered evidence to counter the prosecution's case, including his sister's testimony to the effect that he had called her on the day of the incident with Theresa W., prior to his arrest. Sounding scared, Morton told his sister that Theresa W. had gone "coo coo again," and was biting him even as he was on the phone. The sister said she could hear Morton yelling over the sound of the television set in the background. Morton related that Theresa W. was also hitting him, and that he had to "hold her to keep from hurting her." Morton's sister could hear him ask "why are you doing this to me?"

The sister then went over to the apartment shared by Morton and Theresa W., and reported to a police officer what she had heard on the phone. That officer testified Morton's sister had told him that Morton and Theresa W. had argued over his seeing a stripper on television.

Morton also offered the testimony of a man who rented a room from Theresa W.'s mother. That man testified that he had seen Theresa W. at

---

[1] Apparently, Tina C. contended the violence against her was part of an attempted sexual assault. The court did exclude "any reference to sexual conduct," finding that particular aspect of the prior incident to be more prejudicial than probative. It allowed evidence concerning only the "assaultive aspects of the conduct."

Thanksgiving in 2004. At that time, he did not notice any injuries on Theresa W.'s face or neck, nor did she exhibit or complain of any pain. He also testified that during dinner Theresa W. related that she and Morton had a recent altercation, but claimed it was she who had started it and hit Morton first.

The jury returned a verdict of "guilty" on the charge of domestic battery with corporal injury, and on a charge of misdemeanor assault. Morton had previously waived his right to a jury trial on his prior convictions, and the court found each of the allegations to be true, including two prior "strike" convictions and four convictions which qualified for sentence enhancements pursuant to Penal Code section 667.5, subdivision (b).

Morton subsequently invited the court to strike one or more of his "strike" priors pursuant to Penal Code section 1385, and the court agreed to strike one. The court then sentenced Morton to the upper "aggravated" term of four years on the domestic battery count, doubled that because of Morton's remaining "strike" prior, and added one year for each of Morton's four enhancement priors. The court also sentenced Morton to six months for his conviction on the misdemeanor count, but stayed that pursuant to Penal Code section 654.

In explaining its decision to sentence Morton to the upper term for the domestic battery conviction, the court emphasized his prior criminal history and his failure to comply with the conditions of parole: "[T]he defendant was on parole at the time of this offense. I would also note that his prior performance on parole was unsatisfactory. Numerous times, he was returned to custody upon being released on parole. [¶] And he has numerous convictions as an adult beyond the two strikes and the four prison priors which were alleged under [Penal Code section] 667.5." Although the court recited that these "aggravating factors outweigh the mitigating factors," it did not actually find that any of the mitigating factors listed in California Rules of Court, rule 4.423 had been established.

I

Morton first argues the court abused its discretion by allowing the prosecution to introduce evidence he had engaged in the prior, uncharged, incident of domestic violence involving Tina C. The issue is governed by Evidence Code section 1109, subdivision (a)(1), which specifies that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence" within

the prior 10 years is admissible, unless it is deemed more prejudicial than probative pursuant to Evidence Code section 352.

Morton argues this was a case in which the evidence of prior domestic violence was more prejudicial than probative, and relies almost exclusively on *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 [27 Cal.Rptr.2d 646, 867 P.2d 757], for the proposition that courts must exercise great care in determining whether to admit evidence of prior incidents of domestic violence—especially when, as in this case, the prior incident was never charged or proven against the defendant.

■ Morton is correct that *Ewoldt* emphasizes the "substantial prejudicial effect" inherent in evidence suggesting the defendant had engaged in prior, uncharged, criminal conduct: "the circumstance that defendant's uncharged acts did not result in criminal convictions . . . increased the danger that the jury might have been inclined to punish defendant for the uncharged offenses, regardless whether it considered him guilty of the charged offenses, and increased the likelihood of 'confusing the issues' (Evid. Code, § 352), because the jury had to determine whether the uncharged offenses had occurred." (*People v. Ewoldt, supra*, 7 Cal.4th at p. 405.)

However, *Ewoldt* in no way suggests that such evidence must *generally* be precluded, under Evidence Code section 352, as Morton seems to suggest. To the contrary, the Supreme Court in *Ewoldt* upholds a trial court's decision to admit evidence of the defendant's prior uncharged acts of child molestation, which it concluded were sufficiently similar to the charged conduct as to suggest a "common design or plan,"[2] and had substantial probative value.

■ In fact, the analysis employed in *Ewoldt* can certainly be applied in this case as well, but not to Morton's benefit. First, the court noted that the probative value of "prior acts" evidence is strong when it is indicative of a "common plan or design." And in that case, like this one, there were substantial similarities between the charged and uncharged incidents. Here, in both the current charges and in the prior incident involving Tina C., Morton is described as first striking his victim in the face with a closed fist, and then choking her.

---

[2] *Ewoldt* was decided prior to the enactment of Evidence Code section 1109, and does not involve any of the three categories of crimes enumerated therein. Consequently, it analyzes the admissibility of the prior acts evidence under the rubric of Evidence Code section 1101, before considering whether that evidence is more prejudicial than probative under Evidence Code section 352.

Of course, Morton suggests that the two incidents are not similar, because there was evidence Theresa W. had provoked the attack in the current case, and no such evidence exists with Tina C. We do not view that as a material distinction. Whether Morton's rage is capable of spontaneous combustion, or requires some ignition to get it going is hardly the point. In either case, the evidence suggests he is prone to violent rages, and engages in punching and choking when in the throes of one.[3]

■ Ewoldt also suggests that "[t]he probative value of evidence of uncharged misconduct also is affected by the extent to which its source is independent of the evidence of the charged offense. For example, if a witness to the uncharged offense provided a detailed report of that incident without being aware of the circumstances of the charged offense, the risk that the witness's account may have been influenced by knowledge of the charged offense would be eliminated and the probative value of the evidence would be enhanced." (*People v. Ewoldt, supra*, 7 Cal.4th at p. 404.) In this case, that factor favors admissibility of the evidence far more strongly than it did in *Ewoldt*, where the victim of the prior child molestation was the current victim's sister, and had never previously reported the crimes committed against her.

In this case, not only was there no evidence Tina C. had any relationship with Theresa W., but she first reported the incident of domestic violence perpetrated against her to the police around the time it happened—which was nearly a decade prior to the incident charged in this case. Thus, under *Ewoldt*'s analysis, the prior uncharged incident in this case, which is both similar to, and wholly independent of, the charged crime, must be considered strongly probative.

■ On the prejudicial side, *Ewoldt* notes that whatever prejudicial effect a prior uncharged crime might have is "decreased" if the prior incident is "no more inflammatory than the testimony concerning the charged offenses. . . ." (*People v. Ewoldt, supra*, 7 Cal.4th at p. 405.)

And in this case, it certainly was not—indeed, the court thwarted such a danger by precluding any mention that the prior incident was part of an

---

[3] Certainly, the evidence he had previously engaged in domestic abuse without provocation in no way undermines the claim he did so in this case *after* provocation. The unprovoked earlier violence does, however, undermine his current suggestion that whatever violence he might have engaged in was merely a measured and necessary response to Theresa W.'s own actions. Indeed, the lack of provocation in the earlier incident could well be argued to make it *more* probative rather than less.

attempted sexual assault of Tina C. The portion of Tina C.'s story the court did allow to be told was much less inflammatory than the details of the assault charged in this case. We see virtually no danger that the jury might have wished to impose punishment now for what Tina C. related had occurred between her and Morton 10 years previously, while remaining undisturbed by the details of what Theresa W. related he had done to her only recently.

*Ewoldt* also does little to assist Morton's assertion that the court should have excluded evidence of the prior incident with Tina C. because it had occurred more than nine years prior to the incident charged in this case. Indeed, the *Ewoldt* court noted that although the prior incidents of child molestation introduced against the defendant had occurred 12 years previously, that passage of time did not necessarily affect their probative value. In any event, the Legislature decreed in Evidence Code section 1109 that such incidents are generally admissible if they occurred within the prior 10 years, and this one did.[4] Given that general rule, the onus is on Morton to explain why this prior incident would be less reliable, or less probative, than others of similar vintage. Absent that, Morton's argument amounts to a contention that because the incident is close to the 10-year limitation, we should treat it as though it were past that limit. We cannot.

## II

Morton also contends he was prejudiced by the court's decision to allow Tina C.'s son to testify about the prior incident between Morton and his mother. Morton argues that "a child's testimony regarding an alleged attack on his mother that he witnessed would be expected to and did have an emotional effect upon the jury that was grossly disproportionate to its relevance to the present offense . . . ." We are not persuaded. Morton's argument might have more force if Tina C.'s son were still nine years old at the time of his testimony, but he was not. He got older just as we all did in the decade after the incident between Morton and his mother, and was a 19-year-old man at the time he testified. Moreover, his trial testimony was quite brief—spanning only two pages of transcript—and there is no indication in the record that it was the slightest bit emotional. We can discern no improper prejudice.

---

[4] Subdivision (e) of Evidence Code section 1109 specifies that incidents occurring more than 10 years previously are generally inadmissible, but may be admitted if "the court determines that the admission of this evidence is in the interest of justice."

■ Of course, we agree that the evidence tending to show Morton had engaged in domestic violence in his prior relationship with Tina C. was damaging to the defense in this case. For all we know it may have been the very thing that erased a reasonable doubt from some juror's mind. But such damage does not necessarily equate to legal prejudice, or provide grounds for overturning a verdict: "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.' The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " (*People v. Yu* (1983) 143 Cal.App.3d 358, 377 [191 Cal.Rptr. 859].) Here, the disputed evidence concerning the prior incident between Morton and Tina C. was relevant and probative, and was tailored by the court to redact its most inflammatory elements. We conclude the court did not err in allowing the jury to hear and consider it.

### III

While this case was pending on appeal, the United States Supreme Court decided *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]. At our request, the parties submitted letter briefs addressing the impact of that decision on the sentencing decision in this case.

■ Although the Attorney General argues the sentencing issue was waived when Morton failed to raise it in the trial court, we disagree. Arguing the issue in the trial court would have been futile prior to the *Cunningham* decision, because our own Supreme Court had concluded, in *People v. Black, supra*, 35 Cal.4th 1238, that the trial court could properly make factual determinations regarding aggravating factors for purposes of our determinate sentencing law. The failure to make a futile argument does not amount to a waiver. (*People v. Boyette* (2002) 29 Cal.4th 381, 432 [127 Cal.Rptr.2d 544, 58 P.3d 391]; *People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648 [130 Cal.Rptr.2d 873].)

Turning to the merits, we conclude that even in the wake of *Cunningham,* the court's sentencing decision was proper, and no remand is necessary.

Morton's first argument is evidentiary, and easily disposed of. He asserts the court's findings regarding his prior criminal history are unsupported by admissible evidence, and thus must be disregarded entirely. We disagree. The record reflects that in reaching its sentencing decision, the court considered

not only the briefs filed by the parties, but also a "victim impact statement," as well as "the probation report, 21 pages in length, filed by Deputy Probation Officer Clair Parr. [¶] Attached to that was a letter in the defendants' own hand that [the court] also reviewed." The court then inquired whether the parties had anything else for it to review in connection with the sentencing issue, and granted Morton's request that his counsel be allowed to read into the record part of a statement he had written.

The court's reliance on such evidence was directly authorized by statute. Penal Code section 1170, former subdivision (b) provided: "In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." Additionally, the statute allowed the defendant to dispute the evidence submitted, including the contents of the probation report: "At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts." (*Ibid.*)

Clearly, the contents of the probation report, among other things, are deemed by statute to constitute admissible evidence for purposes of the sentencing hearing, and if the defendant wishes to dispute any of the facts contained therein, it is incumbent upon him or her to offer additional evidence on the point. There is simply no basis to assert that the defendant's criminal history must be established by evidence separate and apart from the probation report.

■ Because each of the aggravating factors relied upon by the court was supported by evidence in the record, we next consider Morton's assertion that, in the wake of *Cunningham*, those factors were required to be submitted to the jury, and found to be true beyond a reasonable doubt. Of course, as a general matter, Morton is correct in asserting that the aggravating "facts" required to be weighed in determining whether a defendant should be subject to the upper term under California's determinate sentencing law must be either admitted by the defendant or submitted to a jury and subject to the "beyond a reasonable doubt" standard. That is the holding in *Cunningham*. (See also *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403,

124 S.Ct. 2531]; *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348].)

However, the *Cunningham* rule has one significant exception, which comes into play in this case. The jury trial requirement does not apply to the fact of "a prior conviction." (*Cunningham v. California, supra,* 549 U.S. at p. ____ [127 S.Ct. at p. 864], citing *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219].) And our Supreme Court has indicated that the prior conviction exception—also known as the "recidivism" exception—applies broadly to all sentencing determinations which require a mere "examination of *court records* pertaining to a defendant's *prior conviction* to determine the nature or basis of the conviction . . . ." (*People v. McGee* (2006) 38 Cal.4th 682, 709 [42 Cal.Rptr.3d 899, 133 P.3d 1054].) As the court explained, such an inquiry is " 'the type . . . that judges traditionally perform as part of the sentencing function.' " (*Ibid.*, quoting *People v. Kelii* (1999) 21 Cal.4th 452, 456 [87 Cal.Rptr.2d 674, 981 P.2d 518]; see also *People v. Thomas* (2001) 91 Cal.App.4th 212, 221–222 [110 Cal.Rptr.2d 571] ["Courts have not described *Apprendi* as requiring jury trials on matters other than the precise 'fact' of a prior conviction. Rather, courts have held that no jury trial right exists on matters involving the more broadly framed issue of 'recidivism.' "].) That being the case, there is no requirement that such issues be submitted to a jury trial or subjected to the beyond-a-reasonable-doubt standard of proof.

In our view, two of the three factors relied upon by the court in this case to justify Morton's aggravated sentence fall comfortably within the "prior conviction" exception. First, the court found that Morton "has numerous convictions as an adult beyond the two strikes and the four prison priors which were alleged under [Penal Code section] 667.5."[5] That qualifies as a finding "of a prior conviction" in even its narrowest sense. Second, the court found that Morton "was on parole at the time of this offense." And while this is not technically the fact "of a prior conviction," it is nonetheless a closely related issue, and one which can be determined by a mere "examination of court records pertaining to a defendant's prior conviction . . . ." (*People v. McGee, supra,* 38 Cal.4th 682, 709, italics omitted.) Simply put, the issue of whether the defendant was on parole is generally not a matter of actual dispute, and under the broadly stated rule of *McGee,* we conclude it was a determination which could properly be made by the court.

---

[5] The fact the court relied specifically on the existence of priors other than those which were alleged and relied upon as enhancements avoids any concern that its reliance on this factor violated Penal Code section 1170, subdivision (b)'s prohibition against double punishment ("The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law.").

The third factor relied upon by the court in this case—that Morton's "prior performance on parole was unsatisfactory"—is more problematic. The issue is not as clear cut as whether the defendant was on parole at the time of the most recent offense, and necessarily requires a bit of analytical judgment—something akin to the determination of "reasonableness" that juries are commonly asked to make.

On the other hand, the precise issue to be analyzed, i.e., whether a defendant's parole performance was "unsatisfactory," is one which has traditionally been made by courts and parole officers, and could certainly be argued as requiring some element of experience and specialized knowledge. After all, "satisfactory" probably doesn't mean *perfect*, and thus the determination would seemingly involve some ability to compare a particular defendant with the others similarly situated. A court would seemingly be in a better position than a jury to engage in that comparison.

But we need not resolve the issue in this case, because even if we were to conclude the decision should have been made by the jury, we could only conclude any error was harmless. *(Washington v. Recuenco* (2006) 548 U.S. 212 [165 L.Ed.2d 466, 126 S.Ct. 2546, 2551–2553].) Frankly, "unsatisfactory" seems like the kindest possible characterization of Morton's performance on parole. In addition to the offenses at issue in this case, Morton's record, establishes that he committed several *other* crimes while on either probation or parole, plus several additional parole and probation violations. We are simply unable to conceive of any definition of the word "unsatisfactory" that would not be satisfied by Morton's dismal record. No fact finder, be it judge or jury, could consider that to be "satisfactory" parole performance. Because the evidence was so overwhelming, we conclude beyond a reasonable doubt that had the issue been submitted to the jury, it would have reached the same conclusion as the court.

■ Finally, our Supreme Court's recent decision in *People v. Black, supra*, 41 Cal.4th 799, instructs us that "the 'statutory maximum' sentence to which defendant was exposed by the jury's verdict was the upper term, because at least one aggravating circumstance . . . was established by means that satisfy the requirements of the Sixth Amendment." (*Id.* at p. 816.) The effect of that rule is to establish more clearly that either one of the two "prior conviction" factors properly decided by the court was, standing alone, a sufficient basis upon which to uphold the sentence. That fairly conclusively forecloses any constitutional sentencing complaint in this case.

In light of our conclusions that two of the three factors relied upon by the court to justify Morton's upper term were properly decided by the court, and that even if the third factor should have been determined by a jury, the error was harmless, and in light of the additional fact of defendant's many prior felony convictions, we find no basis to reverse the sentence imposed. Consequently, the judgment is affirmed.

O'Leary, J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 9, 2008, S161200.