Filed 3/22/13  P. v. Bennett CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C067362 |
| Plaintiff and Respondent, | (Super. Ct. No. 62097686) |
| v. | |
| THOMAS KELLER BENNETT, | |
| Defendant and Appellant. | |

After officers responded to a 911 call from Denise N., they found both Denise and her boyfriend, defendant Thomas Keller Bennett, sporting injuries and smelling strongly of alcohol.  An information charged defendant with corporal injury on a cohabitant and assault by means of force likely to produce great bodily injury.  (Pen. Code, §§ 273.5, subd. (a)—count one, 245, subd. (a)(1)—count two.)[1]  A jury found defendant guilty of both counts and the court sentenced him to seven years in state prison.  Defendant appeals, arguing the trial court erred in admitting evidence of an uncharged domestic violence incident and sentencing error.  We shall affirm the judgment.

---

[1]  All further statutory references are to the Penal Code unless otherwise designated.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Officers responded to a 911 call from a female who stated her boyfriend had beaten her. When they arrived, officers found Denise N., who told them defendant had choked and pushed her, causing injuries. An information charged defendant with inflicting corporal injury on a cohabitant and assault by means of force likely to produce great bodily injury. As to the corporal injury count, the information alleged defendant had suffered a 2004 conviction involving domestic violence and, as to both counts, that defendant had served two prior prison terms. (§§ 273.5, subd. (e), 667.5, subd. (b).)

The prosecutor filed an in limine motion seeking to admit evidence, pursuant to Evidence Code sections 1109 and 1101, subdivision (b), that defendant had committed several instances of prior domestic violence, including a 1994 sexual battery on Jo Ann B. (Pen. Code, § 243.4.) The court granted the motion.

The jury trial revealed the following facts.

**The Incident**

Late one evening in March 2010, Deputy Joshua Barnhart was dispatched to investigate a 911 call from a female who said "she'd been beat [*sic*] up by her boyfriend and had fled her apartment and was at the neighbor's house." Deputy Haskell, Sergeant Clark, and Deputy Ames arrived at the scene shortly afterward.

The officers contacted Denise N., who stood in front of an apartment with her neighbors waving the officers toward them. A visibly shaken Denise was crying and upset. Her lips and nose were puffy and swollen, and there was dried blood around her mouth and on her shirt. Denise had a black-and-blue mark on her right eye and a mark on her neck. At trial, Barnhart identified photos depicting Denise's injuries that evening.

Officers detected a strong odor of alcohol on Denise's breath. Barnhart asked Denise what had happened. Denise appeared to understand Barnhart's words and responded coherently. Denise's speech was not slurred, and she did not need to hold on to anything to steady herself.

Denise told the officers that she and defendant had been drinking that night. The pair began to argue and defendant pushed her to the floor, calling her names. Defendant got on top of Denise and choked her with both hands, telling her, " 'You're gonna die, girl.' " Denise struggled to get free, but defendant put his hand over her mouth and began pushing her face against the floor, injuring her mouth. After Denise went limp, defendant released her. She ran to a neighbor's apartment and called 911. At the scene, Denise declined any medical attention.

Barnhart asked Denise if she wanted him to try and obtain an emergency protective order to keep defendant away from her. She agreed and Barnhart obtained an order, had it served on defendant, and gave a copy to Denise.

During cross-examination, Barnhart agreed that if Denise was a long-time abuser of alcohol, that might cause redness and puffiness in her face. However, he believed the puffiness in Denise's face went beyond being caused by alcohol and was consistent with her statement that defendant had choked her.

Denise told Barnhart her black eye was the result of a fistfight with another woman earlier that week. The black eye appeared old, and Denise never accused defendant of punching her. The smell of alcohol was stronger on Denise than on defendant. Barnhart acknowledged that people who drink habitually are better able to handle their alcohol and appear sober. He did not ask Denise how much she had drunk that night.

### *Interview with Defendant*

Barnhart spoke with defendant at the scene. Barnhart described defendant as angry and flippant. Defendant smelled of alcohol and had small scratches on his arms and dried blood on his nose, but no visible injuries to his face.

Defendant said Denise's injuries were caused by a fight she had had with another woman and adamantly denied any physical altercation with Denise. Any injuries not caused by that fight were caused by the dog. Defendant did admit restraining Denise,

3

which caused the scratches on his arms. Defendant did not mention Denise drinking or being in any type of alcoholic blackout. After defendant's arrest, Barnhart questioned people at the neighboring apartment, but they were not very cooperative.

### *Relationship Between Defendant and Denise*

Defendant and Denise had lived together in an apartment for six years. They began dating a few months before he moved in.

Denise still loved defendant when she testified at trial, and she considered him her fiancé. She had seen defendant several times after the incident, about twice a week. Denise stated she was testifying pursuant to subpoena and hoped defendant would be acquitted.

### *Denise's Testimony*

Denise had two Yorkshire terriers, which were very feisty and protective of her. She did not remember how much she had drunk the night of the incident. However, Denise testified she probably started drinking cups of wine around 11:00 a.m. and might have drunk eight six-ounce cups of wine by early evening. Denise could not remember if she felt the effects of the wine that evening, but did not remember having trouble talking or standing.

Although Denise remembered going to another apartment that evening, she did not remember calling 911. The tape of the 911 call was played for the jury. In the call, the caller asked for someone to come over because her fiancé was hurting her and had threatened to kill her. The caller said her fiancé had burnt her, bitten her, and beaten her up. She identified herself as "Denise [N.]" and gave the dispatcher the phone number and the address. The caller said her fiancé had tried to choke her. She identified defendant as her fiancé and said he had threatened to hurt her pet. Defendant had tried to "asphyxiate" her and hit her in the face with his fist.

Denise identified her voice as the voice on the recording. She explained she suffered a sort of blackout during the call and "was elaborating" because she was angry

4

with defendant and wanted to get him in trouble. When the officers arrived, she was in a drunken state and did not recall telling them that defendant had called her names and told her she was going to die.

Denise did remember defendant drinking wine the evening of the incident but stated he drank less than she did. She did not recall arguing with defendant, but if she had, it was not loud nor was it a fight. Denise might have told the officer that she and defendant had argued about a woman who had come to her apartment and hit her in the face, blacking her eye. Or, she may have falsely told the officer defendant caused her black eye.

Denise did not remember telling the officer that defendant threw her down or put his hands around her throat, nor did she remember defendant doing those things. Instead, she recalled being upset about something and defendant trying to calm her down by placing his hand lightly on her mouth.

When shown the photograph taken that evening of her injuries, Denise testified she might have been wrestling with defendant while she was blacked out. She also stated she swells up and bruises easily. Denise made the 911 call because she was trying to get attention and wanted to dramatize things.

Denise testified she told the prosecutor that she had exaggerated her prior claims about the incident. She wrote the prosecutor's office a letter stating she was in an alcoholic blackout the night of the incident and was responsible for what had happened. In addition, Denise discussed prior incidents in 2002 and 2004 of alleged domestic violence between her and defendant. In each instance she either did not recall the incident or minimized defendant's actions.

*Criminalist Testimony*

A criminalist who qualified as an expert on alcohol consumption testified that an alcoholic has a much higher tolerance for alcohol and would have to drink much more than an occasional drinker would to appear impaired. After the criminalist was given a

5

hypothetical mirroring of Denise's testimony about her alcohol consumption the night of the incident, the criminalist testified that person would not show outward signs of intoxication such as stumbling or slurring of speech.

### 2002 Incident

Sheriff's Deputy Paul Long testified about an incident of domestic violence between defendant and Denise that took place in January 2002. Long responded to a 911 call and found Denise with red eyes and smelling of alcohol. Denise told the officer that she and defendant had been dating for a couple of months and had begun arguing about their relationship. When Denise tried to leave, defendant grabbed her and she fell to the floor. Defendant began to pull her clothes off, called her names, and told her not to walk out on him. Denise said she was not injured and did not want a protective order.

Long interviewed defendant, who also smelled of alcohol. Defendant said the couple argued because Denise had been picking on him, provoking him until he yelled at her. He denied preventing Denise from leaving, and said she had scratched and kicked him. Defendant attempted to stand up for himself and reacted verbally, not physically.

### 2004 Incident

Deputy Nelson Resendes testified regarding an incident of domestic abuse between defendant and Denise that took place in January 2004. When he arrived at their residence, the deputy found Denise frightened and crying, with bruises on her wrist, hand, and lower legs. Denise told him she and defendant had been arguing for days. The arguments had turned physical, and defendant had grabbed her wrists and kicked her.

On the day the officer arrived at Denise and defendant's residence, Denise said defendant had asked her for sex and became angry when she refused. He began yelling and poking at her. Denise threatened to call 911, and defendant told her if she did he would " 'gut [her] ass' " when he got " 'out.' " A deputy who accompanied Resendes confirmed that Denise was upset and emotional. She wanted defendant out of the

6

apartment and wanted a protective order. Denise had bruises on her legs and wrist. The deputy obtained the order.

Resendes interviewed defendant, who said he and Denise argued but there was no physical contact. Defendant said Denise grabbed him by the testicles during the earlier argument. He decided to not call the police and explained that he was having a difficult time dealing with Denise because she was going through menopause. Denise's bruising was caused by kickboxing lessons he was giving her.

**Expert on Domestic Violence**

The court recognized Linda Barnard, a licensed marriage and family therapist, as an expert in domestic violence. Barnard had no knowledge of the parties or their relationship.

Barnard described battered woman's syndrome, a description of a variety of characteristics and behaviors applicable to a specific class of violence. Female victims who report such battering frequently become uncooperative or resist having their assailants arrested or prosecuted. They often change their stories or recant, and commonly testify in court on behalf of the accused.

Barnard cited several reasons for such behavior: the victim may still be in a relationship with her assailant, or the violence has ceased; she may be trying to keep their family together, or be economically dependent on the accused; and sometimes the victim has been threatened or believes it is safer to stay. In addition, there is a high correlation between substance abuse and domestic violence by both the victim and the perpetrator. The victim's substance abuse helps numb the feelings of being abused. Domestic violence tends to escalate over time in both the frequency and severity of the violence.

On cross-examination, Barnard stated she knew of relationships that were mutually combative, but one party was usually stronger than the other. Male victims of domestic violence are reluctant to report it out of embarrassment or a fear of not being

7

believed. Barnard also testified that a person can make a false report of domestic violence out of anger, revenge, or in an attempt to seek attention.

**Stipulation of 1994 Incident**

The parties stipulated that in November 1994 defendant was convicted of felony sexual battery. (§ 243.4.) A probation report that was prepared in lieu of the victim's testimony was entered into evidence. According to the probation report, defendant forced his girlfriend, Jo Ann B., to have sexual intercourse. Jo Ann stated she and defendant had lived together on and off. The evening of the incident, the couple argued and Jo Ann tried to leave. Defendant threw her on the bed and covered her mouth to prevent her from screaming. Defendant let her go when she stopped screaming. About an hour later defendant forced Jo Ann to have intercourse, despite her resistance, after threatening to tie her up. Defendant pleaded guilty to the charge.

**Defense Case**

A defense investigator identified photographs he took of defendant in jail one morning several days after the incident. The photos revealed bruising on defendant's hand and breast area, bruises which appeared several days old.

**Verdict and Sentencing**

The jury found defendant guilty of both counts. The court sentenced him to seven years in state prison: the upper term of five years for count one; the upper term of four years for count two, stayed pursuant to section 654; and consecutive one-year terms for each of the two prior prison term enhancements.

## DISCUSSION

**Admission of 1994 Incident**

Defendant argues the court erred in admitting evidence of his November 1994 conviction of sexual assault on Jo Ann. According to defendant, the incident was over 16 years old and the facts were very different from the current charged offense. In addition, the incident was unduly prejudicial under Evidence Code section 352.

8

**Background**

In support of its motion to admit the incident under Evidence Code sections 1109 and 1101, subdivision (b), the prosecutor provided the court with details of the 1994 incident with Jo Ann. Defendant was convicted of a felony violation of Penal Code section 243.4 and placed on probation. He was later sentenced to prison as the result of a probation violation.

The prosecutor argued the 1994 crime against Jo Ann was admissible under both Evidence Code sections 1109 and 1101. The evidence was admissible under section 1109 even though it was more than 10 years old because it was probative of defendant's propensity for violence against domestic partners and the conduct was very similar to the conduct in the present case. The evidence was admissible under section 1101, subdivision (b) because it showed a common scheme or plan, identity, and motive.

The court determined the evidence was admissible, noting: "[F]irst of all, there was a conviction in the case. Secondly, there are similarities. The victim in the March 2010, the instant case, complained of threats and that the defendant tried to asphyxiate her. In the 1994 incident, the victim also complained she'd been threatened, and she could not breathe. [¶] I also would note that the 1994 incident did pertain to an argument or a fight over sex, which is similar to the 2004 [incident], and I feel that the 1994 [incident], in addition to the 2002 and the 2004 [incidents] shows [*sic*] a pattern really of abuse of women. If it had just been the 1994 [incident] standing alone and then the instant case, I think it would be a lot stronger case for prejudice. [¶] I think in light of the fact that the victim of the . . . 1994 incident, [Jo Ann], will testify[,] will permit the defendant to cross-examine her. I think that the jurors -- that the district attorney can introduce as evidence the conviction, but I would feel that unless the victim testifies -- I would require that the victim testify in that case that I feel the People cannot prove that just with the prior conviction because just the prior conviction alone would be -- it would

9

not provide the relevance, I feel, the background facts, the threats, the attempts to prevent the victim from breathing. So for those reasons the Court has exercised its discretion under [Evidence Code section] 352 and will allow the November 1994 offense to be testified to by the victim."

Defense counsel stated her preference that the 1994 conviction be admitted without details of the victim's testimony, because the facts would be extremely prejudicial. The court noted the objection but stated it had adequately provided a basis for admission of the testimony.

Based on the court's ruling, defense counsel agreed to a stipulation allowing for admission of portions of the probation report of the 1994 incident. The stipulation read to the jury states, in pertinent part: "November 15, 1994, the defendant was convicted of the crime of violating Penal Code Section 243.4, a felony, a sexual battery, and that the probation report based on that crime in lieu of having the actual victim come in and testify, the probation report that was prepared . . . which we will enter into evidence that part of it stated: (Reading) [¶] 'Present offense: The defendant forced sexual intercourse with his girlfriend. . . . [¶] On October 28th, 1994, Officer Clark went to a domestic disturbance at an Auburn residence. Victim Jo Ann [B.] stated she and the defendant, Thomas Bennett, had been residing together for approximately two weeks and had previously resided together from June 1993 to June 1994. On the evening of October 27th, she and [defendant] engaged in a verbal argument resulting in her attempting to leave the residence. At that time [defendant] reportedly threw her onto a bed and covered her mouth to prevent her from screaming. When she stopped trying to scream, the defendant let her get up. Approximately one hour later she went to bed as she thought the defendant would not allow her to leave. [¶] Approximately one hour later the defendant got into bed with the victim and attempted to have sexual intercourse with her. [She] physically resisted and told [him] to leave her alone. At his point the defendant indicated

10

he was going to rape [her] and threatened to tie her hands and feet.' [¶] . . . [¶] . . . Defendant pled guilty to that count and was sentenced."

Afterward, out of the presence of the jury, the court again discussed the admissibility of the incident and noted: "[T]his was a separate victim and tended to me to show that further evidence of the defendant's propensity and also would tend to shed light on the question of . . . whether [Denise] is just making this up out of whole cloth and . . . defendant didn't do anything, as he alleges. [¶] The fact that a separate victim has reported a similar instance, I felt it was highly probative, so I have weighed under [Evidence Code section] 352, and I would note it was over the defendant's objection that they stipulated only to avoid the victim from having to further testify and possibly prejudice your case. That was a trial strategy decision on your [part]." The court also stated the stipulation read to the jury lessened the prejudicial impact because it did not contain some of the more explicit facts.

The court instructed the jury on the evidence of uncharged domestic violence pursuant to CALCRIM No. 852. During closing argument, the prosecutor alluded to the 1994 incident with Jo Ann, reiterating the facts and informing the jury it could consider the stipulated facts "to determine if [defendant] did it before, did he do it this time?" Defense counsel, during closing argument, noted the evidence of uncharged violent acts and stated: "You can't find him guilty just based on the fact he's done it before. The People have to prove he did it this time."

**Discussion**

Under Evidence Code section 1109, evidence of prior domestic abuse is admissible for any relevant purpose but is subject to Evidence Code section 352. Under section 352, a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

11

In evaluating evidence under Evidence Code section 352, the trial court evaluates the similarity of the uncharged act to the charged offense, whether the source of the evidence is independent of the charged offenses, and the amount of time that elapsed between the uncharged and charged offenses. To determine the prejudicial effect, the court examines whether the uncharged act is more inflammatory than the evidence of the charged offense. (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.)

We review the court's decision for an abuse of discretion. (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.) We have held that the trial court has broad discretion in deciding whether the probative value of evidence is substantially outweighed by the potential danger of prejudice. (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168.)

Defendant argues the trial court's decision to admit the "totality of the facts of the 1994 incident created prejudice, confused the issues and in all likelihood turned the jury against [defendant]. It is one thing to admit similar evidence to that of the charged offenses but another to introduce dramatically more prejudicial testimony about an alleged sexual assault in 1994."

In considering whether to admit prior acts of domestic violence, the court must consider whether the prior acts are more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, the closeness in time of the prior act, and whether the defendant has been convicted of the prior acts. (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)

Defendant zeroes in on the consideration of the similarity between the prior and the current conduct, conceding there are similarities between them but arguing the dissimilarity between the acts was prejudicial. In support, defendant cites *People v. Morton* (2008) 159 Cal.App.4th 239 (*Morton*).

In *Morton*, the defendant argued the admission of a prior uncharged incident of domestic violence against a prior girlfriend was unduly prejudicial. The prior incident had taken place nine years before. The *Morton* court ultimately found the probative

12

value of the evidence was not outweighed by its prejudicial effect. The court considered the differences between the two incidents, provocation in one and a lack of provocation in the other, and concluded: "Whether Morton's rage is capable of spontaneous combustion, or requires some ignition to get it going is hardly the point. In either case, the evidence suggests he is prone to violent rages, and engages in punching and choking when in the throes of one." (*Morton, supra,* 159 Cal.App.4th at p. 247.)

In *Morton* the court found the prejudicial impact was thwarted by the trial court's precluding any mention that the prior assault was part of an attempted sexual assault. Therefore, the portion of the prior assault allowed was much less inflammatory than the charged assault. (*Morton, supra,* 159 Cal.App.4th at pp. 247-248.) Here, defendant argues the opposite occurred to his prejudice: the court allowed in a prior incident that was much more inflammatory.

Here, the assault on Jo Ann in 1994 bore striking similarities to the charges against defendant in the present case. Defendant argued with Jo Ann, threw her down on the bed, restrained her, and then choked her. The parties, in an effort to exclude the more inflammatory aspects of the assault on Jo Ann, crafted a stipulation based on the probation report, omitting the most lurid aspects of the assault. Such a redaction comports with *Morton*. Jo Ann did not testify.

On balance, the trial court did not err in exercising its discretion and determining the evidence of Jo Ann's assault was more probative than prejudicial. Although the offense against Jo Ann occurred 16 years prior to the current offense, both incidents revealed defendant had a "problem with anger management, specifically with regard to female intimate partners, and specifically when he feels rejected or challenged by such a partner." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 533.) The evidence of the prior assault was highly probative, and the prejudicial impact was lessened by having the stipulation read in lieu of Jo Ann's testimony.

13

**Sentencing Error**

Defendant argues his sentence should be modified to a four-year upper term, or one of the section 667.5 priors must be stricken. According to defendant, a section 667.5 prior cannot be used to both subject him to a higher sentence and to add an additional one-year term. He requests that we reduce his sentence by one year because of an improper dual use of facts.

Defendant was charged with willful infliction of corporal injury on a cohabitant. In a separate allegation it was asserted defendant had suffered a prior conviction for corporal injury to a spouse within seven years of the charged offense. (§§ 273.5, 273.5, subd. (e)(1).) The information also charged defendant with two prison term priors. (§ 667.5, subd. (b).)

Defendant admitted both priors and acknowledged that the prior conviction in 2004 would increase the possible sentence range from two, three, or four years to three, four, or five years. The court sentenced defendant to the upper term of five years and imposed an additional, consecutive two years, one for each of the two priors.

Defendant argues he is entitled to have his sentence reduced to the upper term set forth in section 273.5, subdivision (a) or to have the one-year term imposed for the prison prior stricken. According to defendant, use of the prior prison term for the dual purpose of enhancing the sentence range and imposition of the one-year term was improper.

Defendant concedes that in *People v. White Eagle* (1996) 48 Cal.App.4th 1511, the court found a defendant could be sentenced to an additional one-year term for a prison prior even where the same prior conviction was used to elevate the misdemeanor crime of petty theft to the felony offense of petty theft with a prior conviction. The *White Eagle* court found the sentence did not violate section 654 or constitute an improper multiple use of the prior conviction. (*White Eagle*, at pp. 1519-1520.) Defendant argues *White Eagle* is distinguishable.

14

Section 273.5, subdivision (e) is an elevated sentencing scheme for repeat offenders. As such, the court properly increased defendant's sentence under that section and under section 667.5, subdivision (b). (*People v. Demara* (1995) 41 Cal.App.4th 448, 451-455.) Defendant's 2004 domestic violence conviction brought him within section 273.5, subdivision (e) sentencing provisions and would have done so whether or not he had been imprisoned for that conviction. The fact of imprisonment is a distinct factor supporting the enhancement under section 667.5, subdivision (b). (*People v. Cressy* (1996) 47 Cal.App.4th 981, 992.)

## DISPOSITION

The judgment is affirmed.



                                                    RAYE            , P. J.



We concur:



            DUARTE            , J.



            HOCH            , J.

15